# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| HORACE LEE DUNLAP, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| v. ) | Civil No. 3:16-cv-01470 |
| ) | Judge Trauger |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM

### I. Introduction

Pending before the court are the Petitioner's Motion To Vacate, Set Aside, Or Correct Sentence In Accordance With 28 U.S.C. § 2255 (Docket No. 1),[1] the Government's Response (Docket No. 9), and the Petitioner's Reply (Docket No. 12). For the reasons set forth herein, the Petitioner's Motion To Vacate (Docket No. 1) is DENIED, and this action is DISMISSED.

### II. Procedural Background

The Petitioner was convicted, after a jury trial held before now-retired Judge Thomas A. Higgins, of two counts of unlawful possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (Docket Nos. 41, 42 in Case No. 3:95cr00098); *United States v. Dunlap*, 134 F.3d 372 (6th Cir. 1998). Prior to sentencing, the Government moved for an upward departure from the Sentencing Guidelines to a sentence of life imprisonment, and Judge Higgins placed the parties on notice that he was contemplating such a sentence. (Docket Nos. 47, 49 in Case No.

---

[1] After the Motion To Vacate was filed, on September 22, 2016, the Sixth Circuit issued an order granting Petitioner's request to file this second or successive petition under Section 2255. (Docket No. 4).

3:95cr00098); *Id.* At the subsequent sentencing hearing, Judge Higgins sentenced the Petitioner to life imprisonment on each count, to run concurrently. (Docket No. 54 in Case No. 3:95cr00098); *Id*. On appeal, the Sixth Circuit affirmed both the Petitioner's convictions and sentence. (Docket No. 69 in Case No. 3:95cr00098); *Id.*

III. Analysis

A. 28 U.S.C. § 2255

The Petitioner has brought this action pursuant to 28 U.S.C. § 2255. Section 2255 provides a statutory mechanism for challenging the imposition of a federal sentence:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). In order to obtain relief under Section 2255, a petitioner "'must demonstrate the existence of an error of constitutional magnitude which had a substantial and injurious effect or influence on the guilty plea or the jury's verdict.'" *Humphress v. United States,* 398 F.3d 855, 858 (6th Cir. 2005)(quoting *Griffin v. United States,* 330 F.3d 733, 736 (6th Cir. 2003)).

If a factual dispute arises in a § 2255 proceeding, the court is to hold an evidentiary hearing to resolve the dispute. *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013). An evidentiary hearing is not required, however, if the record conclusively shows that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b); *Ray,* 721 F.3d at 761; *Arredondo v. United States,* 178 F.3d 778, 782 (6th Cir. 1999). A hearing is also unnecessary "if the petitioner's allegations 'cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.*

2

Having reviewed the pleadings, briefs, and records filed in the Petitioner's underlying criminal case, as well as the filings in this case, the court finds it unnecessary to hold an evidentiary hearing because the records conclusively establish that the Petitioner is not entitled to relief on the issues raised.

B. Johnson v. United States

The Petitioner requests that the court apply the decision in *Johnson v. United States*, ___ U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d 569 (2015) to reduce his sentence. In *Johnson,* the Supreme Court held that the so-called "residual clause" of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), is unconstitutionally vague. The ACCA imposes a 15-year mandatory minimum sentence for defendants convicted of certain firearms offenses who have three previous convictions for a "violent felony" or a "serious drug offense." 18 U.S.C. § 924(e)(1). The "residual clause" is part of the definition of "violent felony," as set forth below in italics:

> (2) As used in this subsection–
> * * *
>
>> (B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year, or any act of juvenile delinquency involving the use or carrying of a firearm, knife, or destructive device that would be punishable by imprisonment for such term if committed by an adult, that –
>>
>>> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>>>
>>> (ii) is burglary, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*. . .

(emphasis added). The *Johnson* Court specifically explained that its decision did not call into question the remainder of the Act's definition of "violent felony." 135 S. Ct. at 2563. In *Welch v.*

3

*United States*, 136 S.Ct. 1257 (2016), the Supreme Court held that the *Johnson* decision announced a substantive rule that applies retroactively on collateral review.

According to the Petitioner, in the absence of the residual clause, his prior convictions for voluntary manslaughter in 1986, assault and battery in 1986, and aggravated assault in 1989, no longer qualify as "violent felonies" under the ACCA. The Petitioner concedes that he has two "serious drug offenses" that qualify under the ACCA, but in the absence of a third qualifying conviction, Petitioner contends that he no longer qualifies for an enhanced sentence under the Act. In its Response, the Government argues that the Petitioner's voluntary manslaughter and aggravated assault convictions qualify as "violent felonies" under the definition's "use-of-force" clause. Because the court concludes that the Petitioner's prior conviction for voluntary manslaughter qualifies as a "violent felony" under the "use-of-force" clause, it is unnecessary to address the Petitioner's aggravated assault conviction.

As set forth above, the "use-of-force" clause includes offenses that have "as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). The Supreme Court has defined the term "physical force," as used in this clause, as "violent force – that is, force capable of causing physical pain or injury to another person." *[Curtis] Johnson v. United States*, 559 U.S. 133, 140, 130 S. Ct. 1265, 1271, 176 L. Ed. 2d 1 (2010). *See also United States v. Southers,* 866 F.3d 364, 366 (6th Cir. 2017).

In determining whether a prior conviction satisfies this definition, courts are to use the "categorical approach," which focuses on the statute defining the prior offense rather than the facts underlying the prior conviction. *See, e.g., Taylor v. United States,* 495 U.S. 575, 600, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990); *Southers,* 866 F.3d at 366. If a statute "sets out a single (or 'indivisible') set of elements to define a single crime," then the court simply compares those

4

elements to the ACCA definition to see if they match. *Mathis v. United States*, ___ U.S. ___, 136 S.Ct. 2243, 2248, 195 L.Ed.2d 604 (2016). If the elements of the statute include a wider range of conduct than the ACCA definition, the prior conviction cannot count as an ACCA predicate. 136 S.Ct. at 2248-49.

If a statute is "divisible," in that it lists elements in the alternative to define multiple crimes, however, courts are to use the "modified categorical approach." *Id.*, at 2249. Under that approach, "a sentencing court looks to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, a defendant was convicted of." *Id.* (*citing Shepard v. United States*, 544 U.S. 13, 26, 125 S.Ct. 1254, 161 L.Ed.2d 205 (2005)). Once the crime of conviction is determined, the court can then make the comparison of elements required by the categorical approach. *Id.*

At the time of the Petitioner's voluntary manslaughter offense in 1986, Tennessee Code Annotated Section 39-2-221 defined "manslaughter" as "the unlawful killing of another without malice, either express or implied, which may be either voluntary upon a sudden heat, or involuntary, but in the commission of some unlawful act." Tenn. Code Ann. § 39-2-221 (1982) (repealed). The Tennessee Supreme Court has described the offense as "[T]he unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice." *Arterburn v. State*, 216 Tenn. 240, 249, 391 S.W.2d 648, 653 (Tenn. 1965)(quoting *Smith v. State*, 212 Tenn. 510, 370 S.W.2d 543 (1963)). *See also Howard v. State*, 506 S.W.2d 951, 954 (Tenn. Crim. App. 1973).

The Petitioner argues that this statute, which includes both voluntary manslaughter and involuntary manslaughter, is indivisible, and because the means of committing "manslaughter"

5

include negligent conduct, the offense does not qualify as a "violent felony." The Petitioner has not cited to any Tennessee case law, however, interpreting the statute as creating only one offense. Indeed, in applying the statute, which is written in the disjunctive, Tennessee courts have consistently distinguished between the offense of "voluntary manslaughter" and the offense of "involuntary manslaughter." *See, e.g., Aterburn*, *supra* (affirming a conviction for voluntary manslaughter); *Osborne v. State*, 512 S.W.2d 612, 618 (Tenn. Crim. App. 1974) (affirming a conviction for involuntary manslaughter). Thus, the court is persuaded that Section 39-2-221 is a divisible statute, and that Petitioner was convicted of the offense of voluntary manslaughter under the statute. *See Hadaway v. United States*, 2017 WL 1393739, at *3-4 (E.D. Tenn. April 18, 2017) (voluntary manslaughter statute, Tenn. Code Ann. § 39-2-221 (1982), is divisible); *Frazier v. United States*, 2017 WL 1103400 (E.D. Tenn. Mar. 23, 2017)(Same).

The Petitioner alternatively argues that voluntary manslaughter does not categorically involve the high level of force contemplated by the "use-of-force" clause. As discussed above, at the time of Petitioner's conviction, voluntary manslaughter was defined as the "unlawful and intentional killing by one of another, without malice, but upon a sudden heat or passion produced by provocation adequate to obscure the reason of an ordinary man, and thus negative malice." *Arterburn, supra*. In considering whether a Georgia conviction for voluntary manslaughter[2] satisfies the "use-of-force" clause, the Sixth Circuit addressed a similar argument in *United States*

---

[2] The Georgia statute defined voluntary manslaughter as follows:

[A] person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person.

Ga. Code Ann. § 16–5–2(a); *United States v. Jackson*, 655 F. App'x at 292.

6

*v. Jackson*, 655 F. App'x 290, 292 (6th Cir. 2016):

> Like the [aggravated assault] statute at issue in *Anderson*, Georgia's voluntary manslaughter statute does not contain an express element requiring the use, attempted use, or threat of physical force. However, as we reasoned in *Anderson*, proof that a person 'cause[d] the death of another human being under circumstances which would otherwise be murder,' § 16–5–2(a), necessarily requires proof that the individual used 'force capable of causing physical pain or injury,' *Anderson*, 695 F.3d at 400 (quoting *Johnson*, 559 U.S. at 140, 130 S.Ct. 1265). Although Jackson attempts to counter this logic by identifying possible factual scenarios in which an individual might 'cause[ ] the death of another human being' without the use of force, like poisoning or laying a trap, we rejected that argument in *Anderson*, agreeing with the Seventh Circuit that 'a defendant's deceit or fraud on the will of a victim which causes serious bodily injury is "equivalent" to the use of force.' *Id.* (quoting *De Leon Castellanos v. Holder*, 652 F.3d 762, 766–67 (7th Cir. 2011)).

Relying on *Jackson*, the Sixth Circuit recently denied a certificate of appealability on the issue of whether a 1999 Tennessee conviction for voluntary manslaughter, under a successor statute, satisfies the "use-of-force" clause: "Similar to the Georgia statute [in *Jackson*], the Tennessee voluntary-manslaughter statute[3] requires proof that the defendant knowingly killed another in circumstances that would otherwise be second-degree murder, and thus necessarily is an offense that has the use of physical force as an element." *Walls v. United States*, 2017 WL 4770923, at *2 (6th Cir. Aug. 24, 2017). The District Court for the Eastern District of Tennessee has applied similar reasoning in holding that a Tennessee conviction for voluntary manslaughter under the same statute at issue here satisfies the "use-of-force" clause. *Hadaway, supra; Frazier, supra.*

The Petitioner has not addressed this authority, but instead argues that an individual could

---

[3] The statute in question, Tenn. Code Ann. § 39-13-211, defines voluntary manslaughter as "the intentional or knowing killing of another in a state of passion produced by adequate provocation sufficient to lead a reasonable person to act in an irrational manner." 2017 WL 4770923, at *2.

7

commit voluntary manslaughter under this definition by use of poison, and that the Sixth Circuit has recognized that poisoning does not require sufficient physical force, citing *United States v. Jones*, 673 F.3d 497, 506 (6th Cir. 2012). In *Jones*, the defendant argued that his prior conviction for assault with intent to commit first degree murder was not a "violent felony" under the ACCA. *Id*. In addressing the defendant's argument, the court stated:

> This statute [defining the offense] does not necessarily require use of physical force, because it includes poisoning, which need not involve direct physical contact or force. *We need not decide the issue* because even if Defendant's conviction did not fit the use of physical force provision, it fits within the residual provision.

673 F.3d at 506 (emphasis added). The court goes on to discuss the residual clause and does not otherwise elaborate on the concept of direct and indirect force.

More recently, the Sixth Circuit has rejected the distinction suggested in *Jones*:

> Hoping for a different conclusion, Verwiebe invokes *United States v. Scott*, No. EP-14-CR-42-PRM, 2014 WL 4403162 (W.D. Tex. July 28, 2014), claiming it shows that assault under § 113(a)(6) is not a crime of violence because it may involve indirect force that causes serious bodily injury. In that case, the district court used the example of poisoning a victim's drink as evidence that § 113(a)(6) swept too broadly. *Id*. at *4. But we have refused to draw a line between direct and indirect force in this context. *United States v. Evans*, 699 F.3d 858, 864 (6th Cir. 2012). And for ample reason. A defendant uses physical force whenever his volitional act sets into motion a series of events that results in the application of a 'force capable of causing physical pain or injury to another person.' *See id*. We see no problem with the poison scenario. The 'use of physical force' is not the drop of liquid in the victim's drink; it is employing poison to cause serious bodily harm. *See United States v. Castleman*, ––– U.S. ––––, 134 S.Ct. 1405, 1415, 188 L.Ed.2d 426 (2014). Under Verwiebe's theory, tripping somebody into oncoming traffic, or for that matter perpetrating a sarin gas attack, would not be a crime of violence. Creative minds, once unhinged from common sense, might even suggest that pulling the trigger of a gun is not a sufficiently direct use of physical force. Sentencing law does not turn on such fine, reality-defying distinctions.

*United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017). Based on this authority, the Petitioner's "indirect force" argument fails.

Finally, the Petitioner argues that another statute that has now been repealed, Tennessee

8

Code Annotated Section 39-6-915(a), demonstrates that the crime of voluntary manslaughter could be committed through non-forceful conduct. Section 39-56-915(a) provides:

> Any person who shall sell, give away, or furnish to any other person for beverage purposes any intoxicating liquor, the drinking of which shall cause the death of any person, shall be deemed guilty of murder in the second degree; but if such person not being the manufacturer of such liquor, have no knowledge of the poisonous or injurious quality of such liquor, his offense shall be reduced to voluntary manslaughter; and further, this provision shall not apply to any case of death by poison falling within the statute defining murder in the first degree, should the liquor contain poison.

The Petitioner does not suggest that he was convicted of voluntary manslaughter under this statute, and the relevant *Shepard* documents underlying his conviction make clear that he was not. Those documents indicate that Petitioner was charged with second degree murder involving a handgun, but pled guilty to the reduced charge of voluntary manslaughter. (Docket No. 9-1).[4] There is no mention in the charging documents of anything to do with intoxicating liquors. As Petitioner was, therefore, convicted of voluntary manslaughter under the variant discussed above, the court need not address the issue of whether a conviction under this particular statute qualifies as a "violent felony."

Having concluded that the Petitioner's voluntary manslaughter conviction qualifies as a "violent felony" under the "use-of-force" clause, and that the Petitioner has two convictions for "serious drug offenses," the Petitioner remains an Armed Career Criminal without regard to the residual clause invalidated by *Johnson*.

IV. Conclusion

---

[4] The court is permitted to refer to the charging documents in determining the Petitioner's crime of conviction. *See, e.g., United States v. Cooper*, 739 F.3d 873, 881-82 (6th Cir. 2014). The court is not considering the factual recitations in the charge in determining whether the facts alleged satisfy the definition of "violent felony."

For the reasons set forth herein, the court concludes that the Petitioner's request for Section 2255 relief is without merit. Accordingly, the Petitioner's Motion To Vacate is denied and this action is dismissed.

If the Petitioner gives timely notice of an appeal from the court's Memorandum and Order, such notice shall be treated as a application for a certificate of appealability, 28 U.S.C. 2253(c), which will not issue because the Petitioner has failed to make a substantial showing of the denial of a constitutional right. *Castro v. United States,* 310 F.3d 900 (6th Cir. 2002).

It is so **ORDERED.**

ENTER this 2nd day of March 2018.

_____
ALETA A. TRAUGER
U.S. District Judge